IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATHAN L. SCHMIDT,           )
                             )
          Plaintiff,         )
                             )
     vs.                     )   Civil Action No. 12-690
                             )
COMMISSIONER OF SOCIAL SECURITY, )
                             )
          Defendant.         )

O R D E R

AND NOW, this 4th day of April, 2013, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. §1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. §405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

1

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]

The Court finds that substantial evidence supports the ALJ's determination of non-disability. Plaintiff advances two arguments, neither of which have merit. First, Plaintiff argues that substantial evidence does not support the ALJ's finding that he did not meet or equal Listing 12.05C for Mental Retardation because the ALJ improperly rejected his 2007 performance IQ score of 70 reported in Dr. Wheeler's examination. Second, Plaintiff contends that the ALJ's Residual Functional Capacity ("RFC") finding is not supported by substantial evidence because it fails to account for Plaintiff's intellectual deficits in reading, writing, and math.

With respect to Plaintiff's first contention, it is well-established that "an ALJ may reject [IQ] scores that are inconsistent with the record" as long as he adequately explains his basis for doing so. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). An ALJ, however, is not permitted to reject an IQ score based on his own speculative inferences and observations of the claimant. Id. at 187. "In arriving at his determination of whether an IQ score is valid, i.e., the score is 'an accurate reflection of [a claimant's] intellectual capabilities,' the ALJ is to consider the entire record before him." Miller v. Astrue, 2011 WL 2580516, at *6 n. 5 (E.D.Pa June 28, 2011) (quoting Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir. 2007) (upholding the ALJ's rejection of IQ score as invalid because it was "not an accurate reflection of [a claimant's] intellectual abilities."). "Test results may be considered invalid where there is evidence that the claimant was malingering or deliberately attempting to distort the results during the test administration." Id. at *6 (citing Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005) and Lax, 489 F.3d at 1087). Indeed, "[m]aking factual determinations on the validity of IQ scores is within the province of an ALJ." Lax, 489 F.3d at 1086; see also Popp v. Heckler, 779 F.2d 1497, 1500 (11th Cir. 1986).

Here, the Court finds that substantial evidence supports the ALJ's decision to reject Plaintiff's 2007 performance IQ score of 70 as invalid because the record contains evidence that Plaintiff purposely was trying to secure low scores during his IQ tests and thus deliberately attempting to distort the results. The Court also finds that, in rejecting Plaintiff's IQ score, the ALJ relied on the actual medical evidence of record and not his own speculative inferences or observations. (R. 493). Indeed, in rejecting the score, the ALJ cited to Dr. Wheeler's 2007 IQ testing where the psychologist expressed his belief that the scores were not an accurate reflection of Plaintiff's intellectual capabilities, because "he appeared tired and **appeared to invest little effort at times if the task did not appeal to him** while at other times invested more of himself if he enjoyed the task."

2

(R. 365) (emphasis added); Compare Markle, 324 F.3d at 187 (noting that psychiatrist who administered IQ test concluded scores were valid because "**he did not qualify them**") (emphasis added). Contrary to Plaintiff's contention, Dr. Wheeler *did not* conclusively state that the 2007 IQ Scores were valid – he only noted that "the intratest scatter is minimal and **suggests** the test scores are valid." (R. 366) (emphasis added). Unlike Markle, and as noted by the ALJ, Dr. Wheeler **immediately qualified** his statement about the "suggestion" of validity with a caveat that the results may have "understated the claimant's true intellectual potential." (R. 493). In concluding that the performance score of 70 was invalid, the ALJ relied on the fact that "the repeat IQ testing done by [Dr. Wheeler] in February 2011 b[ore] the same caution" regarding the questionable validity of the scores. (R. 493). Indeed, in Plaintiff's 2011 IQ testing, Dr. Wheeler actually concluded that "the **validity of the test scores may be suspect as patient appeared to invest little of himself in the testing** and had a tendency to respond with 'don't' know' . . . 'cant or don't know how' . . . ." (R. 493) (emphasis added). The ALJ also relied on the fact that Dr. Wayne, Plaintiff's treating psychiatrist at Mon-Yough Community Center, deferred diagnosis of any "Axis II" disorder (the axis designated for intellectual deficits) and did not even diagnose Plaintiff with borderline intellectual functioning. See (R. 493). In fact, the ALJ explicitly stated that he was rejecting the IQ scores "[b]ased on the treating source's decision not to make a diagnosis of mental retardation (or the related disorder, borderline intellectual functioning), together with the reservations that Dr. Wheeler had regarding the validity of the claimant's scores . . . ." (R. 493). He also noted that Plaintiff had "completed high school and had been mainstreamed in such challenging classes as biology and history, courses that a mentally challenged person would not typically attempt." (R. 494). The ALJ also noted that the "Social Security Administration did not include mental retardation in among its diagnoses on the determination of disability dated July 22, 2009 in the new claim file." (R. 493).

Plaintiff's reliance on Markle therefore is misplaced, as it is clear that the ALJ rejected the score by relying heavily on the medical evidence, and not solely on Plaintiff's activities of daily living. Furthermore, the ALJ's decision to reject the score was not based on his own observations and speculative inferences drawn from the record but rather was grounded in Dr. Wheeler's own reservations about the validity of the scores reported in his own testing as well as Dr. Wayne's reservations about diagnosing an intellectual disorder. Compare Markle, 324 F.3d at 187. The ALJ concluded that it appeared that Plaintiff "attempted to manipulate his test scores in order to present himself as more seriously impaired than he actually is" and that his "poor effort at multiple consultative [] exams can easily be explained in light of his desire to remain on supplemental security income." (R. 493, 495). The Court finds that substantial record evidence supports this conclusion as well as the finding that Plaintiff does not meet Listing 12.05C.

Turning to the second issue, the Court finds that Plaintiff waived his argument with respect to the ALJ's RFC determination because he failed to

3

raise this specific error with the district court that first reviewed the ALJ's determination and remanded the case for further evaluation of the Listing issue. Indeed, arguments that are not raised before the district court are deemed waived on appeal. See Maddaloni v. Comm'r of Soc. Sec., 340 Fed. Appx. 800 n. 1 (3d Cir. 2009); Money v. Barnhart, 91 Fed. Appx. 210, 214 (3d Cir. 2004) ("[The plaintiff] apparently did not raise the first issue regarding the error in step four to the district court, and it is therefore waived."). Plaintiff's argument that the ALJ's RFC finding failed to account adequately for his intellectual limitations in reading, writing, and math is a distinct and new complaint of legal error that was not raised and argued before Judge McVerry in the initial appeal from the ALJ's 2009 determination. See Pl.'s Brief at CA 09-707 (Doc. No. 9 at 25-31). Although Plaintiff did raise an RFC argument in his first appeal, that argument related to whether the RFC finding properly accounted for limitations in pace, handling work stress and simple decision-making. (Id. at 28-39). To be sure, the ALJ's RFC assessment in his 2009 determination was similar to the one in his 2011 decision and it also did not include any intellectual limitations addressing Plaintiff's deficiencies in reading, writing, and math. See CA 12-690 (Doc. No. 6 at 22). Thus, any failure on the part of the ALJ to account for Plaintiff's intellectual limitations was an issue that was identifiable during the first appeal and it was neither raised with the district court, nor addressed in the court's Memorandum Opinion ("Opinion"). See Opinion at CA 09-707 (Doc. No. 14 at 19-20). Though the court did find error with the ALJ's RFC finding, that finding was based on the ALJ's failure "to properly consider Plaintiff's IQ scores in conjunction with Dr. Wheeler's other observations and reconcile the significance of Plaintiff's performance IQ score and previous IQ scores with his intellectual deficits." (Id.). The court's Opinion did not squarely address the issue of whether the RFC was deficient because of any failure to incorporate limitations for reading, writing, and math. In light of the fact that the district court sits as an appellate court in its review of social security appeals, and not as a fact-finder, it sees no practical difference between the procedural posture of this case and the scenario where a circuit court cannot evaluate the merits of an argument because it was not raised with the district court who evaluated the matter before it. Indeed, in this particular case, this Court is the second district court to conduct appellate review of this claim and Plaintiff's failure to raise this issue with Judge McVerry in his first appeal renders it waived.

The Court does not find that any "manifest injustice" will result from its decision to not entertain the merits of the RFC claim. See Altman v. Altman, 653 F.2d 755, 758 (3d Cir. 1981). The Court finds that it would be inappropriate to raise an argument now for the first time when it could have been raised and resolved through the first appeal, and, further finds it unfair to allow Plaintiff a second bite at the apple merely because he had the benefit of a remand. Indeed, it would be a different matter if the issue of whether the RFC properly accounted for Plaintiff's intellectual deficits had surfaced for the first time on this second appeal, but such is not the case. In any event, the ALJ's focus on remand was "limited to the question

Therefore, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment (document No. 13) is DENIED and defendant's Motion for Summary Judgment (document No. 15) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

raised by the Court, namely, whether the evidence adduced in connection with a subsequent successful application for supplemental security income compels a finding that the claimant's childhood disability did not cease." (R. 491). The ALJ had no basis to reconsider Plaintiff's RFC, particularly in relation to issues not raised before Judge McVerry. Regardless, the ALJ explicitly considered these intellectual limitations, finding that Plaintiff "has limited spelling, reading, and math skills," but that he was "able to complete simple tasks" despite his learning difficulties. (R. 21). It is clear that the entire focus of this case has been on whether Plaintiff meets the listing for mental retardation and the Court is satisfied that the ALJ adequately explained his basis for finding that he did not. The Court thus finds that the ALJ's determination of non-disability enjoys the support of substantial record evidence.